**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SAMUEL R. H.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-CV-00021-CDL** |
| | ) | |
| **FRANK J. BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

## I. Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

## II. Procedural History

On May 5, 2022, Plaintiff filed an application for Social Security Disability Insurance benefits, and on August 24, 2022, Plaintiff filed an application for Supplemental Security Income benefits. *See* R. 17. Plaintiff alleged that his disability began on December 13, 2021, when Plaintiff was 44 years old. Plaintiff completed high school in special education classes and has had some vocational education. An administrative law judge (ALJ) determined that Plaintiff has past work as a welder or steel worker. R. 29.

The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing, and the ALJ held a telephone hearing on May 1, 2024, at which testimony was given by Plaintiff and a vocational expert (VE).

The ALJ issued a decision dated May 30, 2024, finding Plaintiff not disabled and

denying disability benefits. The Appeals Council denied Plaintiff's request for review on November 15, 2024, which rendered the ALJ's decision the agency's final decision. Following the Appeals Council's denial, Plaintiff timely filed a Complaint in this Court. Accordingly, the Court has jurisdiction to review the ALJ's May 30, 2024 decision under 42 U.S.C. § 405(g).

## III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ considers work activity. If the claimant is gainfully employed, the ALJ will find the claimant not disabled. *Id.* At step two, the ALJ considers the impairment's severity and duration. *Id.* At step three, the ALJ determines whether the medical impairment meets an appropriate listing and the appropriate residual functional capacity (RFC). *Id*. At step four, the ALJ finds whether, in light of the RFC, the claimant may return to his previous work. *Id*. If not, the ALJ moves to step five, determining whether at the claimant's RFC, age, education, and work experience, there are jobs available in significant numbers in the national economy the claimant can perform. *Id.* The plaintiff bears the burden of establishing a prima facie case for steps one through four. *Grogan,* 399 F.3d at 1261. If the plaintiff's burden is met, "the burden of proof shifts to the Commission at step five to show that the claimant retains sufficient RFC to perform work in the national economy." *Id.*

Here, the ALJ determined at step one that Plaintiff met the insured status requirements through December 31, 2026, and had not engaged in substantial gainful activity since his alleged onset date of December 13, 2021. (R. 19). At step two, the ALJ

found that Plaintiff has severe impairments of diabetes mellitus and neuropathy. R. 20. The ALJ found that Plaintiff's "medically determinable mental impairments of major depressive disorder, anxiety disorder, and autism spectrum disorder considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." *Id*. The ALJ also addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a mild limitation in each of the relevant domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 21. At step three, the ALJ found Plaintiff's combination of impairments do not meet or medically equal the severity of a Listing.

At step four, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: the claimant can stand and/or walk for 2 hours in an eight-hour workday. He should not have a job that requires the use of foot pedals. The claimant should not perform any climbing. He can frequently handle and finger. He should not be exposed to extreme heat or cold, nor should he be exposed to hazards, such as dangerous machinery or unprotected heights.

(R. 24-25). In support of this finding, the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," medical opinions and prior administrative findings in accordance with applicable regulations.

At step four, the ALJ concluded that Plaintiff is unable to perform his past relevant work as actually or generally performed. Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with Plaintiff's age, education, and RFC, the ALJ found Plaintiff can perform the requirements of representative occupations including:

> ***Document preparer***, sedentary exertion, unskilled, specific vocational preparation (SVP) Level 2, Dictionary of Occupational Titles (DOT) # 249.587-018, with approximately 29,290 positions jobs existing in the national economy;
>
> ***Surveillance system monitor***, sedentary exertion, unskilled, SVP 2, DOT # 379.367-010, with approximately 30,180 positions; and
>
> ***Food beverage order clerk***, sedentary exertion, unskilled, SVP 2, DOT # 209.567-014, with approximately 22,020 positions.

R. 30. The ALJ concluded that other work exists in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff is not disabled at step five.

## IV. Discussion

Plaintiff alleges three points of error in the ALJ's decision. First, he argues that the ALJ erred by selectively ignoring and/or failing to adequately address why he rejected certain aspects of the April 2024 medical source opinion of Plaintiff's treating provider, Dr. James Lackey. Second, Plaintiff contends the ALJ improperly failed to consider Plaintiff's non-severe mental impairments throughout the sequential evaluation process. Third, Plaintiff argues the ALJ failed to perform a proper assessment of his subjective statements. The Commissioner argues that the ALJ applied the proper legal standard throughout the sequential process in evaluating the medical and non-medical evidence in the record.

**A. Dr. Lackey**

The ALJ's decision must articulate how the ALJ considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[1] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[2]

Here, in April 2024 Dr. Lackey completed a physical medical source statement in which he noted that Plaintiff was restricted to: (1) lifting and carrying up to 50 pounds occasionally and 20 pounds frequently; (2) sitting eight hours at a time and eight out of eight hours a day; (3) standing 30 minutes at a time and two out of eight hours a day; (4) walking 30 minutes at a time and two out of eight hours a day (without need of an assistive device); (5) frequent reaching in all directions and occasional handling, fingering, feeling and pushing/pulling with each upper extremity; (6) no climbing ladders, ropes, or scaffolds and occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (7) having no exposure to unprotected heights, extreme heat or cold, or vibrations and occasional exposure to moving mechanical parts, operating a motor vehicle, humidity

---

1 For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

2 The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

and wetness, and pulmonary irritants such as dust, odors, and fumes; and (8) tolerating moderate (office level) noise. R. 658-663.

The ALJ concluded that most of the exertional and environmental limitations opined by Dr. Lackey were "generally persuasive." R. 29. However, the ALJ found certain portions of the opinion "not fully persuasive," specifically where Dr. Lackey opined that Plaintiff has certain postural and reaching limitations. R. 28-29. With respect to manipulation, the ALJ explained that "the consultative examination showed the claimant's grip strength was reduced to a 4 out of 5 bilaterally; while this is consistent with a limitation to frequent handling and fingering, it . . . is more consistent with frequent, nor[sic] occasional, manipulative limitations with the upper extremities." R. 28-29. The ALJ further noted that "[i]n addition, a September 2021 examination, three months before the alleged onset date, showed no musculoskeletal tenderness. Moreover, in February 2024, an examination showed normal extremities and a normal gait, with no mention of loss of range of motion or back problems." R. 29. Thus, the ALJ's decision explained the persuasiveness of this opinion in terms of its inconsistency with Dr. Lackey's examination findings.

Plaintiff argues that the ALJ should have discussed the manipulative limitation in connection with other examination findings such as generalized muscle atrophy, diminished upper extremity reflexes, and essential tremors that a provider indicated were worsened by intentional movements and may occur with repetitive activities or psychological stress. But the ALJ referenced the relevant portions of the medical record throughout his decision.

Plaintiff argues that the ALJ's decision failed to adequately explain why the ALJ rejected the limitation to standing and walking only 30 minutes at a time. The ALJ agreed

that Dr. Lackey's diagnosis of peripheral neuropathy is consistent with "no more than 2 hours of standing and walking in an eight-hour workday as well as limitations regarding the use of foot controls." R. 28. Yet the ALJ also noted Dr. Lackey observed on occasions that Plaintiff had a normal gait and station, normal extremities, and no lesions on his feet. R. 28-29.

The ALJ's decision reflects a detailed consideration of Dr. Lackey's functional assessment. To the extent the ALJ failed to recite any of the specific limitations noted on Dr. Lackey's assessment, Plaintiff has not shown any reversible error, as the ALJ is not required to discuss each finding in a medical source opinion. The Commissioner's regulations explain that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, the ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually"; rather, the ALJ's decision should "articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." *Id*.

As the Tenth Circuit has explained, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id*. (internal citations and quotation marks omitted). Here, the ALJ's

decision addressed the reliability and supportability of Dr. Lackey's opinion, and substantial evidence supports the ALJ's conclusions. Nothing further was required. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

**B. Non-severe Mental Impairments**

At step two, the ALJ determined that Plaintiff has non-severe mental impairments including major depressive, unspecified anxiety, and autism spectrum disorders. The ALJ discussed the medical evidence in detail in the 'paragraph B' analysis, concluding that Plaintiff's mental impairments impose mild limitations on his capacities for understanding, remembering, or applying information; interacting with others; concentration, persistence, and maintaining pace; and adapting or managing himself.

Plaintiff does not argue that the ALJ erred at step two by failing to classify his mental impairments as severe. However, Plaintiff argues that the ALJ failed to include further discussion in the RFC explanation to support the ALJ's finding of no mental limitations. The Tenth Circuit has recognized that ALJ decisions must be read "as a whole," and that evidence discussed in one part of a decision reasonably supports conclusions in other parts. *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730, 734-35 (10th Cir. 2005).

Here, the ALJ discussed, among other evidence, the opinions of non-examining psychological consultants Bruce Lochner, Ph.D. and Cynthia Kampschaefer, Ph.D.; two psychological consultative examiners; and a treating psychological social worker. The ALJ noted certain testing reflecting a full-scale IQ "in the average intellectual functioning

range." R. 23. Moreover, while the ALJ weighed a range of examination findings relevant to the paragraph B functional domains, overall he concluded that Plaintiff's testing scores and treatment records are more consistent with finding no mental limitations." *Id*. Despite some conflicting evidence, Plaintiff's treatment records "fail to show significant deficits in memory, concentration, or social functioning; thus, those records are inconsistent with finding more than mild mental limitations." *Id*.

Plaintiff notes that the ALJ's step-five determination relied upon jobs requiring reasoning level three and "significant amounts of social interaction (i.e. food and beverage order clerk and surveillance system monitor)." (Doc. 14 at 12). However, Plaintiff's brief does not point to any evidence the ALJ overlooked that could establish work-related mental limitations. Moreover, the record does not reflect evidence, such as testimony in the ALJ hearing, regarding the potential effect of any further mental limitations on the ALJ's step-five determination. Accordingly, the Court finds no reversible error in the ALJ's consideration of Plaintiff's mental impairments.

**C. Subjective Statements**

Plaintiff argues that the ALJ's decision did not adequately address Plaintiff's limited daily activities, failed to address how Plaintiff's severe impairment of diabetic neuropathy corroborated his subjective statements, and failed to adequately weigh Plaintiff's persistence in seeking treatment for his physical and mental conditions. In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged

(what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3] In evaluating pain, the Commissioner considers factors including the claimant's daily activities; frequency and intensity of pain or other symptoms, precipitating and aggravating factors, and the effectiveness of treatment. *See* 20 C.F.R. § 416.929(c).

Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation omitted).

In his hearing testimony and written statements, Plaintiff attested to physical functional limitations including difficulties with prolonged standing, walking long distances, using his hands, getting along with peers, finishing what he starts, and handling changes in routine, as well as the use of medications for diabetes, mental conditions, and gastrointestinal issues despite adverse side effects. He described having some difficulties

---

[3] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

with daily activities—for example, needing to use a walk-in shower due to the risk of falling in a bathtub; only preparing simple, microwave meals; requiring breaks to perform household chores; and only rarely spending time with others.

The ALJ's decision summarized Plaintiff's testimony and subjective complaints as follows:

> the claimant testified his hands shake and he is unable to stand for very long. He worked as a welder and says that most welding jobs are outdoors, and the heat and cold affect him because of his diabetes. He says diabetes has hurt his kidneys and he has to frequently urinate. The claimant says it is hard for him to use foot pedals because he is unable to feel them. He says he has frequent falls and changed his bathroom to have a walk-in shower due to a history of bathtub falls. In his function report, he also wrote that he is weak and dizzy a lot of the day and his hands do not work without extreme pain. He also indicated he had trouble lifting, walking, standing, climbing stairs, squatting, bending, and kneeling.

R. 25 (internal citations omitted).

Thus, the ALJ recounted many relevant details of Plaintiff's subjective statements regarding his physical limitations. However, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ explained his conclusion in a detailed discussion referencing Plaintiff's treatment over years for diabetes mellitus, as well as multiple consultative examination and non-examining physician opinions. Notably, the ALJ rejected certain findings by state agency consultants, including that Plaintiff "could stand and/or walk about 4 hours in an eight-hour workday" and did not have any postural, manipulative, visual, communicative, or environmental limitations. *See* R. 27.

The ALJ also discussed Plaintiff's course of treatment for his physical and mental impairments, noting that Plaintiff received treatment from Dr. Lackey for diabetes, and his diabetic neuropathy "was described as chronic, but controlled." R. 26. Plaintiff reported problems with his feet in February 2023, reporting "burning pain, tingling, and a 'pins and needles' sensation all the time," but exhibited no edema and did not use an assistive device. *Id*. A treating nurse observed that Plaintiff's "feet are at high risk for amputation bilaterally secondary to loss of sensation." *Id*. However, in February 2024, Dr. Lackey observed Plaintiff's gait was normal, with no clubbing, cyanosis, or edema. R. 27.

The ALJ explained how he weighed the medical evidence, stating that

> This evidence of diabetes mellitus and neuropathy, especially a history of treatment for lesions on his feet and decreased sensation in his lower extremities, supports a sedentary residual functional capacity, with no climbing or use of foot pedals. There is also evidence of slightly decreased grip strength, and this not only supports a sedentary lifting and handling restriction, but also no climbing and only frequent handling and fingering. Further, the diagnosis of diabetes mellitus along with decreased sensation supports the claimant should not be exposed to extreme heat or cold, nor should he be exposed to hazards.

R. 27.

As such, the ALJ's decision explained that the evidence justified certain limitations, but not to the full extent the plaintiff alleged. Even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58 (10th Cir. 2007). Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements in light of the medical evidence. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must

affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). As such, reversal is not warranted.

## V. Conclusion

For the reasons set forth above, the ALJ's decision is consistent with the applicable legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled is **affirmed.**

**SO ORDERED** this 30th day of September, 2026.

Christine D. Little

Christine D. Little
United States Magistrate Judge